Marco RIVERA, Plaintiff,

v.

Henry RIVERA, Defendant.

No. 01–2335–JPO.

United States District Court, D. Kansas.

June 26, 2003.

Donald M. McLean, Hayes & Kieler, L.L.C., Overland Park, KS, for Plaintiff.

Mark C. Owens, Thomas F. McGraw, III, Thomas F. McGraw III, Chartered, Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER, AND REPORT AND RECOMMENDATION

O'HARA, United States Magistrate Judge.

### I. Introduction.

Following a three-day trial of this case, the jury returned a verdict in favor of the defendant, Henry Rivera. Later, the plaintiff,

Marco Rivera, filed a motion for new trial. On May 13, 2003, the court granted plaintiff a new trial on the basis that the jury's verdict was clearly, decidedly, and overwhelmingly against the weight of the evidence.[1]

Fifteen days later, on May 28, 2003, the court convened a status conference to set a new trial date and discuss other details relating to the retrial of this case. At that time, defense counsel suggested that the undersigned may wish to recuse himself because of the nature of the court's order granting plaintiff a new trial. Defendant also moved to withdraw his consent to proceed before a magistrate judge. The court informed the parties that it would conduct its own independent research and determine whether the undersigned would sua sponte recuse himself. Absent a ruling on that issue, however, the court directed defendant to file a motion for recusal and set an expedited briefing schedule to facilitate a prompt resolution of both the recusal and the withdrawal of consent issues.[2]

Defendant's motion for recusal (**doc. 62**) is now before the court, as is defendant's oral motion to withdraw his consent to proceed before a magistrate judge. For the reasons explained below, the court will deny defendant's motion for recusal. Further, the undersigned will submit defendant's motion to withdraw consent to proceed before a magistrate judge to the Honorable Carlos Murguia, U.S. District Judge, for his consideration, and will recommend that this motion be denied.

### II. Motion for Recusal.

The court will first address defendant's motion for recusal. The court has reviewed defendant's motion and supporting memorandum (doc. 62), as well as plaintiff's response (doc. 65). The time for defendant to reply has expired.[3] For the reasons explained below, defendant's motion is denied.

■ By way of the instant motion, defendant argues the undersigned should recuse himself based on 28 U.S.C. § 455(a) & (b)(1),

---

1. Mem. & Order (doc. 57). For a complete discussion of the factual background of this tragic and grisly case, see *Rivera v. Rivera*, 262 F.Supp.2d 1217, 1219–23 (D.Kan.2003).

2. *See generally* Order (doc. 58) (memorializing the court's rulings at the status conference).

3. *Id.* at 1 (setting a reply deadline of June 20, 2003).

under which a judge must disqualify himself if "his impartiality might reasonably be questioned" or if "he has a personal bias or prejudice concerning a party." The broader of the two provisions, § 455(a), is designed to prevent even the appearance of partiality.[4] Therefore, the judge must recuse himself where there is the appearance of bias, regardless of whether any actual bias exists.[5] "The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."[6]

■ Yet a judge has "as much obligation . . . not to recuse when there is no occasion for him to do so as there is for him to do so when there is."[7] Thus, he has a duty to sit when there is no legitimate reason for him to recuse himself.[8] Courts must exercise great care in considering motions for recusal in order to discourage their use for judge shopping or delay.[9]

In this case, defendant's complaints arise solely from the court's recent memorandum and order in which the court granted plaintiff's motion for a new trial. Thus, the alleged bias does not stem from any extrajudicial source. Under these circumstances, the Supreme Court has explained that the court should recuse itself only if a reasonable person would believe that the undersigned has displayed such "deep-seated favoritism or antagonism that would make fair judgment impossible."[10]

The crux of defendant's argument is that the court supposedly wants plaintiff to prevail so badly that the court has coached plaintiff how to succeed during the second trial of this case. More specifically, defendant argues that the court coached plaintiff regarding Paula Kahmann's testimony in footnote 40 of its order, improperly recommended that plaintiff may want to request a limiting instruction regarding Enrique Rivera's sexual abuse of two of his daughters (Miriam and Siboney), inordinately delayed in ruling on plaintiff's motion for new trial, and attacked defendant's credibility while describing plaintiff as an exceptionally credible witness.

■ No reasonable person would believe that the undersigned has displayed the level of "deep-seated favoritism or antagonism" that would make recusal proper in this case. Although the court did grant plaintiff a new trial, defendant ignores that adverse rulings do not in and of themselves support recusal.[11]

---

**4.** *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *Harris v. Champion*, 15 F.3d 1538, 1571 (10th Cir.1994).

**5.** *Bryce v. Episcopal Church–Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir.2002); *see also Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("[W]hat matters is not the reality of bias or prejudice but its appearance.").

**6.** *Bryce*, 289 F.3d at 659 (quotation omitted); *accord David v. City and County of Denver*, 101 F.3d 1344, 1350 (10th Cir.1996); *see also United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir.2000) ("A judge has a continuing duty to recuse under § 455(a) if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality.").

**7.** *David*, 101 F.3d at 1351 (quotation omitted); *accord Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1508 (10th Cir.1995).

**8.** *Bryce*, 289 F.3d at 659; *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir.1995).

**9.** *Nichols*, 71 F.3d at 351 (noting that § 455(a) is not "intended to bestow veto power over judges or to be used as a judge shopping device"); *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993) (noting that Congress was concerned that § 455(a) might be abused as a judge-shopping device); *see also, e.g., In re Allied–Signal, Inc.*, 891 F.2d 967, 970 (1st Cir.1989) ("[T]he disqualification decision must reflect . . . the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."); *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir.1988) ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly . . . because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping.").

**10.** *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147; *accord United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir.2000); *United States v. Deters*, 184 F.3d 1253, 1256 (10th Cir.1999).

**11.** *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147 (adverse rulings are grounds for appeal, not recusal).

Further, although the court granted plaintiff a new trial partially because defendant was an extremely poor witness whereas plaintiff was an exceptionally credible witness, opinions formed by a judge based on facts introduced or events occurring during legal proceedings ordinarily do not support recusal.[12]

■ Defendant also ignores the fact that, when the court ruled in defendant's favor on the knotty Fed.R.Evid. 404(b)-issue regarding Enrique's rampant sexual abuse of Miriam and Siboney, the court went to great lengths to ensure that the second trial of this case will be a fair one for *both* parties. If there were even a scintilla of merit to defendant's hypothesis that the court is attempting to manufacture a particular trial outcome, the court presumably would have made the discretionary ruling that this type of Rule 404(b)-evidence should be excluded during the second trial based on Rule 403–considerations because, in retrospect, it very likely confused the jury during the first trial. But the court declined to make such a discretionary finding. Instead, for the reasons explained in the court's prior order, the court believes that upon retrial the jury should have the opportunity to hear this evidence, damaging as it might be for plaintiff, in order that the jury can make as fully informed a

decision as possible regarding the merits of this case.

For the same reason, the court believes that the jury should have the opportunity to evaluate admissible testimony from Paula Kahmann to the extent that the parties wish to present that evidence. At the first trial, Ms. Kahmann's lack of testimony regarding her counseling sessions with defendant left a gaping hole in the factual record. Footnote 40 of the court's order was simply designed to make sure that the parties were not laboring under any impression that the lack of testimony from Ms. Kahmann on this subject matter was the result of any ruling by the court.[13]

Of course, the court does not know what, precisely, Ms. Kahmann's testimony would be regarding her counseling sessions with defendant. Admittedly, her testimony could hurt defendant's case. But it is also possible that her testimony could hurt plaintiff's case. Either way, though, footnote 40 was simply designed as an impetus to encourage both parties to begin to think about resolving this issue.[14]

Insofar as defendant points to the inordinate delay in ruling on plaintiff's motion for a new trial, the court fails to understand how this consideration weighs in favor of either party. The court already explained that the

**12.** *Id.; see, e.g., United States v. Kimball,* 73 F.3d 269, 273 (10th Cir.1995) (judge's remark that he intended defendant·to "die in prison" was "an unfortunate comment" but not formed by information learned outside judicial proceedings and did not display "deep-seated and unequivocal antagonism that would render fair judgment impossible"); *see also, e.g., White v. Pence,* 961 F.2d 776, 777 (8th Cir.1992) (holding the trial court committed reversible error where it failed to give proper weight to its honest assessment of witnesses' credibility in ruling on a motion for a new trial).

**13.** On December 19, 2001, the court entered an order (doc. 14) directing the Wyandotte County district attorney's office to produce certain records but to withhold any documents created by or at the direction of any physician, psychologist, and/or counselor. This stipulated order was submitted by the parties and the Wyandotte County district attorney. On January 15, 2002, the court entered an order (doc. 17) granting defendant's motion for a protective order to prevent the disclosure of confidential communications between defendant and any physicians, psychother-

apists, psychologists, or social workers that may be contained in the records maintained by the Wyandotte County district attorney's office. The court entered this order as unopposed because plaintiff had not filed a timely response to defendant's motion for a protective order. Thus, as the court correctly observed in footnote 40 of its order, "[t]he court was never called upon to decide directly whether any testimony from Kahmann regarding her individual counseling sessions with Henry would have been privileged and thus inadmissible." *See* Mem. & Order (doc. 57), at 26 n. 40.

**14.** *See, e.g., In re Haas,* 292 B.R. 167, 178 (Bankr.S.D.Ohio 2003) (statements made by the court directing plaintiffs to review certain case law and focus on a particular element of the prima facie case do not reflect that the court prejudged the case or attempted to coach opposing counsel as to defense strategy; statements were consistent with the court's responsibility to use its resources efficiently by fleshing out the issues to be tried, focusing the parties on the elements of their claims for relief, and ensuring effective presentation of evidence at trial).

overwhelming majority of this unfortunate delay was caused by the court reporter's failure to prepare the transcript, which was probably as frustrating to the trial judge as it was to the parties, i.e., the undersigned's chambers did not receive this transcript until late February or early March 2003. In any event, however, whether the court would have granted plaintiff's motion for a new trial nine months ago or one month ago, the ultimate result would have been that both parties would be put to the financial and emotional strain of yet another trial. Thus, this consideration impacts both parties equally.

Defendant's argument regarding the proposed limiting instruction is unpersuasive. On pages 10–11 of the court's order, the court recited the four-part analysis the court *must* undertake when determining the admissibility of Rule 404(b)-evidence. The fourth component of this analysis is that, if requested, the court must give an appropriate limiting instruction. On page 19 of the court's order, the court simply observed that no such instruction was requested in this case. Indeed, the court cannot imagine why either party would care whether such an instruction is given in this case because the purpose of such an instruction would be to eliminate any prejudice to the person against whom the evidence is offered, *i.e.*, in this case, Enrique. Enrique is not a party to this case and, in fact, is now deceased.

Lastly, as plaintiff accurately points out in his response to defendant's motion to recuse: "The Court did not say that Marco must always be believed and Henry can never be believed. The Court said that as the case was presented in August 2002, he found Marco more credible than Henry[.]"[15] That is, the court did not state that it would never uphold a defense verdict. Rather, it ruled that it did not believe that a reasonable jury could have found in favor of the defendant *based on the state of the record at the first trial.*[16]

In sum, the court has not displayed antagonism for the defendant at all, let alone deep-seated antagonism. Nor is the court predisposed to favor the plaintiff. Indeed, the court can envision that a credible record could conceivably support either party. Thus, the undersigned has a duty to sit and hear this case because there is no legitimate reason for recusal.[17] Accordingly, defendant's motion for recusal is denied.

### III. Motion to Withdraw Consent to Proceed Before a Magistrate Judge.

Next, the court will turn to defendant's oral motion to withdraw his consent to proceed before a magistrate judge. The court has reviewed defendant's memorandum in support of his oral motion (doc. 63) and plaintiff's response (doc. 66). The time for defendant to reply has expired.[18] For the reasons explained below, the court will submit this matter to Judge Murguia for his consideration, and will recommend that this motion be denied.

The court will construe the instant motion as a motion to vacate a reference to a magistrate judge pursuant to Fed.R.Civ.P. 73(b).[19] Once a civil case has been referred to a magistrate judge for disposition, a party does not have an absolute right to withdraw consent.[20] Rather, the reference may be withdrawn only if the district court, on its own motion, finds good cause to do so, or, on motion by a party, under extraordinary cir-

---

15. Pl.'s Resp. to Def.'s Mot. for Recusal (doc. 65), at 6.

16. *See* Mem. and Order (doc. 57), at 25 (noting that the court made its ruling after "having carefully considered the trial record as a whole").

17. *See, e.g.,* Haas, 292 B.R. at 180 (holding a combination of adverse rulings, comments concerning possible weaknesses of a party's case, and criticism stemming from failure to comply with local rules did not establish deep-seated favoritism or antagonism).

18. *See* Order (doc. 58), at 2 (setting a reply deadline of June 20, 2003).

19. The parties have not cited, and the court has not located, any Tenth Circuit precedent involving a party's attempt to withdraw consent to proceed before a magistrate judge in a civil case. Therefore, the court will look to persuasive authority from other circuits.

20. *Dixon v. Ylst,* 990 F.2d 478, 480 (9th Cir. 1993); *Carter v. Sea Land Servcs., Inc.,* 816 F.2d 1018, 1020 (5th Cir.1987).

cumstances.[21] Here, the court is not inclined to withdraw defendant's consent sua sponte because good cause does not exist to do so. Thus, the court must examine whether the required extraordinary circumstances exist.

■ Defendant argues that the essential purpose of the consent has been defeated because defendant originally consented to trial before a magistrate judge so that he could obtain a date-certain trial on a reasonably expedited basis and avoid the time and costs associated with multiple episodes of trial preparation that is sometimes necessitated by a district judge's trial schedule. While the standard of "extraordinary circumstances" has not been precisely defined,[22] the court has no difficulty concluding that the consideration articulated by defendant does not constitute extraordinary circumstances sufficient to justify vacating the order of consent.[23] Otherwise, parties would be free to withdraw their consent anytime it became convenient to do so.

Defendant cites only two cases in support of his motion to withdraw his consent to trial by a magistrate judge, *United States v. Lee*[24] and *United States v. Mortensen*[25], which supposedly support the proposition that he did not waive his constitutional right to an Article III judge for an "unlimited number of retrials." Notably, however, both *Lee* and *Mortensen* involved a criminal defendant's consent to proceed before a magistrate judge. The consent statute that applies in criminal cases[26] is silent regarding the circumstances under which consent may be withdrawn[27] and, therefore, courts consider a variety of factors when determining whether a party can revoke consent to proceed before a magistrate judge.[28] In stark contrast, the consent statute that applies in civil cases[29] expressly provides that consent may be withdrawn by a party only upon a showing of extraordinary circumstances.[30] Therefore, criminal cases dealing with the withdrawal of consent to proceed before a magistrate judge are unpersuasive because they do not apply the legal standard that the

**21.** 28 U.S.C. § 636(c)(4); Fed.R.Civ.P. 73(b); *Fulton v. Robinson*, 289 F.3d 188, 199 (2d Cir. 2002); *Dixon*, 990 F.2d at 480.

**22.** *Murret v. City of Kenner*, 894 F.2d 693, 695 (5th Cir.1990) ("The parameters of the extraordinary circumstances condition for vacating the reference of a civil matter to a magistrate [judge] have yet to be defined."); *see also infra* note 32 (proposing a standard for determining whether extraordinary circumstances exist).

**23.** *Compare Murret v. City of Kenner*, 894 F.2d 693, 695–96 (5th Cir.1990) (holding the failure of all parties to consent to trial before the magistrate judge constitutes extraordinary circumstances justifying withdrawal of the reference); *Cooley v. Foti*, No. 86–3704, 1988 WL 10166, at *5 (E.D.La.1988) (finding that retaliatory acts taken by the magistrate judge amounting to personal bias constitutes extraordinary circumstances), *with Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir.1987) (no extraordinary circumstances where a magistrate judge permitted the plaintiffs to amend their complaint from requesting $150,000 to $10 million in punitive damages); *Frank v. County of Hudson*, 962 F.Supp. 41, 44 (D.N.J.1997) (no extraordinary circumstances where magistrate judge allotted three weeks for trial instead of the requested six weeks); *Jurado v. Klein Tools, Inc.*, 755 F.Supp. 368, 371 (D.Kan.1991) (no extraordinary circumstances where a party claimed that its attorneys' consent to proceed before a magistrate judge was not binding upon the client).

**24.** 539 F.2d 606 (6th Cir.1976).

**25.** 860 F.2d 948 (9th Cir.1988).

**26.** 28 U.S.C. § 636(a).

**27.** *United States v. Neville*, 985 F.2d 992, 999 (9th Cir.1993) (noting the criminal consent statutes "are silent as to the circumstances under which consenting misdemeanants may later withdraw validly given consent to be heard by a magistrate judge and reinvoke the right to proceed before an Article III judge"); *United States v. Simmonds*, 179 F.R.D. 308, 312 (D.Colo.1998) ("There is no statutory provision for withdrawal of consent [in a criminal case.]").

**28.** *See, e.g., Neville*, 985 F.2d at 999 (listing a variety of factors); *Mortensen*, 860 F.2d at 950–51 (holding the notice of withdrawal must be timely); *Simmonds*, 179 F.R.D. at 311–12 (citing the factors listed in *Neville*).

**29.** 28 U.S.C. § 636(c).

**30.** 28 U.S.C. § 636(c)(4); Fed.R.Civ.P. 73(b); *see also Neville*, 985 F.2d at 999 n. 17 (noting that, in comparison to criminal statutes that are silent on this issue, consent may be withdrawn in a civil case pursuant to 28 U.S.C. § 636(c) for good cause or upon a showing of extraordinary circumstances).

court must apply in civil cases such as this one. Thus, defendant's reliance on *Lee* and *Mortensen* is misplaced.

■ Defendant also argues that his "consent does not expressly extend to retrials and does not specifically reference a new trial." To the contrary, defendant consented to have the undersigned **"conduct any and all proceedings in this case,** including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings[.]" [31] A motion for a new trial is a common, and indeed almost a standard, type of post-trial motion. Admittedly, the grant of a new trial on the basis that the jury's verdict was against the weight of the evidence is rare, but it is by no means a post-judgment proceeding that is unforeseeable.[32] Thus, the court finds that defendant knowingly and voluntarily waived his right to proceed before an Article III tribunal for any retrials when he consented to have the undersigned "conduct any and all proceedings in this case."

The reasons that defendant gives in the instant motion for wanting to withdraw his consent are an obvious sham for judge shopping. This motion was coincidentally made at the status conference in conjunction with defendant's suggestion that the court may wish to sua sponte recuse itself from this case only fifteen days after the court issued a ruling that was unfavorable to defendant. It is patently obvious that this motion was motivated by defendant's dissatisfaction with the court's recent order granting plaintiff a new trial. This certainly does not amount to a showing of extraordinary circumstances.[33]

■ Although a magistrate judge may permit a party to withdraw consent to proceed before a magistrate judge in a civil case, the magistrate judge does not have jurisdiction to deny a motion to withdraw consent.[34] Fed.R.Civ.P. 73(b) specifically allows "[t]he district judge" to "vacate a reference . . . to a magistrate judge." [35] The district judge retains so-called "residual authority" to vacate the order of reference.[36] Thus, although the undersigned is of the opinion that defendant should not be permitted to withdraw his consent in this case, that decision is ultimately one that must be made by the district judge who was originally assigned to this case.

**31.** Consent to Exercise of Jurisdiction by a United States Magistrate Judge (doc. 21) (emphasis added); *see also* 12 Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice & Procedure § 3072, at 414 (2d ed.1997) (when the magistrate judge is proceeding with the parties' consent, the magistrate judge has authority "to perform all of the functions of a district judge").

**32.** As a side note, the court wishes to acknowledge that while the extraordinary circumstances standard has not been precisely defined, it would make sense to construe this standard to be consistent with the notion that a party's waiver of the right to proceed before an Article III tribunal must be knowing and voluntary. Thus, a party's consent ought to be deemed to extend to the full panoply of proceedings and circumstances that a party could and should know might arise during the course of ordinary litigation. On the other hand, a party should be allowed to withdraw consent if proceedings or circumstances arise that the party neither could nor should have conceivably foreseen at the time the party executed the waiver (*i.e.*, extraordinary circumstances).

**33.** *See, e.g., Moses v. Sterling Commerce,* No. 2:99–CV–1357, 2003 WL 1869158, at *1 (S.D.Ohio Apr. 4, 2003) (extraordinary circumstances not shown where the motion to withdraw consent was motivated by the litigant's dissatisfaction with the magistrate judge's rulings); *Doe*

*v. Nat'l Bd. of Med. Examiners,* No. 99–4532, 2001 WL 1003206, at *4–*6 (E.D.Pa. Aug. 14, 2001) (prior adverse rulings are not extraordinary circumstances).

**34.** *Dowell v. Blackburn,* 776 F.Supp. 283, 283 (W.D.Va.1991) (noting that the Fourth Circuit ruled the magistrate judge was without jurisdiction to deny a motion to vacate a reference and, therefore, remanded the case to the district court to rule on the motion); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 3071.3, at 411 (2d ed.1997) ("It has been held that the magistrate judge may also permit withdrawal of consent, although the magistrate judge's refusal in no sense limits the power of the district judge to vacate the reference.").

**35.** *See also* 28 U.S.C. § 636(c)(4) (providing more generally that "[t]he court" may vacate the order of reference).

**36.** *Paddington Partners v. Bouchard,* 950 F.Supp. 87, 89 (S.D.N.Y.1996); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra* note 33, § 3071.3, at 410; *see also Cooley v. Foti,* No. 86–3704, 1988 WL 10166, at *2 (E.D.La. Feb. 5, 1988) ("[A] motion to vacate a reference to a magistrate is properly brought . . . before the district judge in the first instance.").

Accordingly, the undersigned hereby submits this matter to Judge Murguia for his consideration and recommends that defendant's motion to withdraw consent be denied for the reasons stated above.

IV.   Conclusion and Order.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.   Defendant's motion for recusal (**doc. 62**) is denied.

2.   The court submits defendant's oral motion to withdraw consent to proceed before a magistrate judge to Judge Murguia for his consideration, and recommends that this motion be denied for the reasons stated above.

3.   The clerk shall serve copies of this order on all counsel of record.